

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-14-00466-CR**

KATHERINE SUE MCKEEVER          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY
TRIAL COURT NO. CR17445

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In one issue, Appellant Katherine Sue McKeever challenges the sufficiency of the evidence used to support her conviction for possession of a controlled substance. Specifically, McKeever argues that the evidence does not prove that

---

[1]*See* Tex. R. App. P. 47.4.

she possessed the methamphetamine found in a plastic bag on the passenger floorboard during a search of a pickup. We affirm.

## II. Facts

On December 12, 2012, while on patrol for the City of Rhome, Officer Brody Brown noticed McKeever watching him closely from the passenger seat of a pickup truck parked in the Love's Truck Stop.[2] Based upon his training and experience, Officer Brown felt that she was behaving suspiciously.

Officer Brown radioed in a routine check of the pickup's license plate and found it did not match the description of the registered vehicle. So Officer Brown waited for the pickup to pull out of the parking lot, and he followed it until he observed the driver commit a minor traffic violation—failure to signal within 100 feet of a turn. At that point, Officer Brown pulled the pickup over and, after some brief questioning, asked the driver, Dusty Jobe, to step out of the vehicle. Before Jobe left the vehicle, Officer Brown noticed that McKeever was "very fidgety with her fingers, she was not willing to look at [him], [and] she was grinding her teeth."[3]

---

[2]Officer Brown testified that McKeever "turned around and watched [him]" when he went around to the backside of the truck stop, and she "never took her eyes off [him] until [he] was out of her sight."

[3]Officer Brown testified that, based upon his training and experience, fidgety fingers and teeth grinding are two indicators that a person is under the influence of methamphetamine.

As Jobe exited the vehicle, Officer Brown noticed an open beer bottle on the floorboard. He removed the bottle, emptied the contents onto the ground, and placed the empty container into the bed of the pickup. After asking for and receiving permission from Jobe to search the vehicle, Officer Brown asked McKeever to exit the vehicle. Because McKeever emerged from the pickup with her hands in her pockets, Officer Brown became concerned for his safety, so he instructed McKeever to take her hands out of her pockets. McKeever complied, but she did so in such a manner that her hands went immediately from her pockets, over the tailgate of the pickup, and into the bed of the truck.

As she completed this odd maneuver, Officer Brown heard a muffled sound of clinking glass, as if something had fallen into the bed of the pickup. At that point, Officer Brown asked both Jobe and McKeever to step away from the pickup and toward the front of his vehicle. Jobe immediately complied. McKeever initially hesitated but then complied. Officer Brown then looked inside the pickup bed where he noticed a black nylon cosmetics bag, which he had not seen previously, near the beer bottle. When he looked inside the bag, Officer Brown found a glass methamphetamine pipe containing burnt residue. The pipe was not tested to determine whether it contained any illegal substance, but Officer Brown arrested McKeever for possession of drug paraphernalia.

Upon searching the cab of the pickup, Officer Brown also found a small plastic bag containing a crystal substance on the passenger-side floorboard and

3

a crystal substance on the carpet.[4]  No fingerprints were taken from the plastic bag, and Officer Brown testified that he had no idea how long it had been sitting on the floorboard of the vehicle.

McKeever was charged with possession of a controlled substance, penalty group 1, in an amount less than one gram.  The jury found McKeever guilty, and the trial court sentenced her to eight years' confinement but suspended imposition of sentence and placed her on eight years' community supervision, including the condition that she serve 180 days in the Wise County Jail and complete a substance abuse treatment program.

### III. Evidentiary Sufficiency

In her sole issue on appeal, McKeever argues that the evidence is legally insufficient to support her conviction for possession of a controlled substance.[5]

### A.  Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to

---

[4]Crime lab analysis subsequently revealed that the bag contained trace amounts of methamphetamine.  The substance on the carpet was not tested.

[5]The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)); *see Acosta v. State*, 429 S.W.3d 621, 624 (Tex. Crim. App. 2014) ("[W]e review the sufficiency of the evidence establishing the elements of a criminal offense under the single sufficiency standard set out in *Jackson v. Virginia*.").

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

## B. Analysis

A person commits the offense of possession of a controlled substance if she knowingly or intentionally possesses a controlled substance listed in penalty

5

group 1, which includes methamphetamine. Tex. Health & Safety Code Ann. §§ 481.102(6), .115(a) (West 2010). To prove possession, the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew that the matter possessed was a controlled substance. *Id.* § 481.002(38) (West 2010 & Supp. 2014); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The State may prove the elements of possession through direct or circumstantial evidence; however, the evidence must establish that the accused's connection with the substance was more than fortuitous. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).

If the contraband is not found on the accused's person, independent facts and circumstances may "link" the accused to the contraband such that it may be justifiably concluded that the accused knowingly possessed the contraband. *Evans*, 202 S.W.3d at 161–62; *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Links are established by the totality of the circumstances, and no set formula necessitates a finding of a link sufficient to support an inference of knowing possession. *Wright v. State*, 401 S.W.3d 813, 819 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The number of linking factors present is not as important as the "logical force" they create to prove that an offense was committed. *Roberson*, 80 S.W.3d at 735.

Texas courts have identified a number of links that may, alone or in combination with others, establish a person's possession of contraband, including the following: whether the contraband was (1) in plain view; (2)

6

conveniently accessible to the accused; (3) in a place owned, rented, possessed, or controlled by the accused; (4) in a car driven by the accused; (5) found on the same side of the car as the accused; or (6) found in an enclosed space; and whether (7) the odor of narcotics was present; (8) drug paraphernalia was in view of or found on the accused; (9) the accused's conduct indicated a consciousness of guilt (e.g., furtive gestures, flight, conflicting statements); (10) the accused had a special relationship to the drug; (11) the accused possessed other contraband or narcotics when arrested; (12) the accused was under the influence of narcotics when arrested; (13) affirmative statements connected the accused to the drug; (14) the accused's presence; and (15) the accused was found with a large amount of cash. *Evans*, 202 S.W.3d at 162 n.12; *Roberson*, 80 S.W.3d at 735 n.2; *Villegas v. State*, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). However, the absence of various links does not constitute evidence of innocence to be weighed against the links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Because the plastic bag containing the methamphetamine was not found on McKeever's person, linking factors must be present to support a conviction. *See Roberson*, 80 S.W.3d at 735. The linking factors present in this case include:

- McKeever's suspicious behavior in "never [taking] her eyes off of [Officer Brown]" once he arrived in the Love's Truck Stop parking lot;

7

- Other behavior consistent with being under the influence of methamphetamine, i.e., the grinding of teeth and fidgeting with her fingers;

- The manner in which McKeever exited the pickup, with her hands in her pockets, combined with the odd manner in which she removed her hands from her pockets when directed to do so—by immediately putting her hands over the tailgate of the pickup and into the back of the truck;

- The simultaneous noise Officer Brown heard when McKeever put her hands into the back of the truck, described as a muffled sound of clinking glass, as if something had hit the bed of the pickup truck, combined with the appearance in the pickup bed of a black nylon bag containing a glass methamphetamine pipe, which had not been there previously;

- McKeever's initial hesitation when she was asked to step away from the area near the pickup bed where the glass pipe was found; and

- The location where the plastic bag containing methamphetamine was found—on the passenger side floorboard.

McKeever argues that despite the fact that the plastic bag containing methamphetamine was found "in plain sight on the floorboard of the vehicle," there was no evidence to show how long either McKeever or the bag had been in the vehicle, the bag could have belonged to Jobe, and it could have slid out from under the seat at some undetermined point in time. This much of McKeever's assessment of the evidence is correct. McKeever also correctly points out that she did not make any incriminating statements at the scene.

However, while there is no evidence of incriminating statements, there is evidence of incriminating conduct at the scene, including her suspicious

8

demeanor at the Love's Truck Stop and her bodily gestures and behaviors which, according to Officer Brown, were consistent with methamphetamine use. And it is completely inaccurate to suggest, as McKeever does in her brief, that there is no evidence that she made any furtive gestures. McKeever stepped out of the pickup with both hands in her pockets, conduct which Officer Brown perceived as a potential threat to his safety from a concealed object. After Officer Brown heard the sound of clinking glass, McKeever's hesitation to obey his direction to step away from the area also constituted some evidence of secretive behavior. Finally, methamphetamine drug paraphernalia, albeit untested for the presence of drugs, was discovered near the place where she appeared to drop something into the pickup bed in what could reasonably be described as a furtive manner.

When viewed in the light most favorable to the verdict and given the required due deference to the jury's credibility determinations, these facts combine to create a logical force that would enable a rational jury to determine beyond a reasonable doubt that McKeever's relationship to the methamphetamine found on the pickup's floorboard was more than fortuitous and that she intentionally or knowingly exercised care, custody, control, or management over it. *See James*, 264 S.W.3d at 219–20 (affirming gun possession conviction of passenger observed bending down as though he was placing something under his seat near where gun was later found).

We therefore hold the evidence is sufficient to support McKeever's conviction for possession of a controlled substance, namely, methamphetamine,

in an amount of less than one gram.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.  We overrule McKeever's sole point.

## IV. Conclusion

Having overruled McKeever's sole point, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 30, 2015